**NONPRECEDENTIAL DISPOSITION**

To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Argued June 11, 2014
Decided July 15, 2014

**Before**

DIANE P. WOOD, *Chief Judge*

RICHARD A. POSNER, *Circuit Judge*

DIANE S. SYKES, *Circuit Judge*

No. 14-1405

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>     *Plaintiff-Appellee*,<br><br>  *v.*<br><br>LISA C. LUCKETT,<br>     *Defendant-Appellant*. | Appeal from the United States District Court for the Southern District of Illinois.<br><br>No. 3:13-cr-30165-DRH-1<br><br>David R. Herndon,<br>*Chief Judge*. |

**O R D E R**

Lisa Luckett defrauded the Illinois Medicaid Home Services Program for 6 ½ years. After she was caught, she entered open pleas of guilty to two counts of health care fraud in violation of 18 U.S.C. § 1347. Although her advisory guidelines range was a modest 12 to 18 months, the district court decided that a 48-month sentence was

appropriate. Luckett appeals, contending only that this sentence was substantively unreasonable. The district court, however, amply justified its reasons for thinking that Luckett's crime called for this much punishment, and the sentence is not otherwise illegal. We therefore affirm.

Luckett became the personal assistant in 2006 for Dorothy Cooper, a Medicaid beneficiary who had been disabled by a stroke. Luckett's services were funded by the Illinois Medicaid Home Services Program, which is designed to help disabled people stay in their homes while they receive necessary services from a home-care worker. It appears, however, that Luckett was ineligible to perform this work: a person who has been deemed disabled and who is collecting disability insurance, logically enough, is not permitted to serve as a personal assistant in the program. Luckett was aware of this problem, and so when she filled out the paperwork to become Cooper's assistant, she used the name of her daughter Sharetta instead of her own name.

Cooper moved into Luckett's home in December 2007, and for roughly the next 3 ½ years, she billed the program (using Sharetta's name) for services rendered to Cooper. Over that time, according to the time sheets, she furnished 3,534 hours of care, for which she received $57,371. In July 2011 her system hit a roadblock when the Internal Revenue Service notified Sharetta that the Medicaid funds that she supposedly had received were unreported income. Sharetta promptly told her mother to stop using her name.

Luckett obliged her daughter, but this did not spell the end to her position as Cooper's caregiver. Instead, she recruited her neighbor, Henry Billups III, to serve as the nominal provider. Billups was amenable, because Luckett promised to share some of the ill-gotten funds with him. He filled out a new set of forms for Illinois Medicaid, while Luckett stayed on as the *de facto* caregiver. At one point, someone from the state agency conducted a home visit and found her there; she introduced herself as Billups's wife. She submitted time sheets falsely indicating that Billups had devoted 2,038 hours to Cooper's care from July 2011 through March 2013. He received $20,965, most of which he handed over to Luckett, for these "services." According to Billups, Luckett told him that she passed that money along to Cooper's family; Luckett said that Billups understood her fraudulent scheme.

Matters took a gruesome turn in March 2013. On March 21, an ambulance was dispatched to Luckett's home. One of the responding EMTs testified that upon entering the bedroom, the team was assailed with an overpowering foul odor. They found Cooper's body wrapped up in a comforter. It was covered in fresh and old fecal matter and showed numerous bed sores, some of which were so severe as to reveal the outline

of her hip bone. The autopsy report attributed Cooper's death to "malnutrition and sepsis due to neglect of medical, nutritional and hygienic care" and classified her death as a homicide. Luckett was arrested a few months later and charged in federal court with two counts of health care fraud, to which she pleaded guilty. She also faces state charges for criminal neglect of an elderly person and criminal neglect of an elderly person resulting in death. See 720 ILCS 5/12-4.4a.

After Luckett pleaded guilty to the federal charges, a probation officer prepared a presentence report, which calculated a total offense level of 13 and a criminal history category of I, for an advisory guidelines imprisonment range of 12 to 18 months. The primary question at the sentencing hearing was whether a sentence within this range would be adequate, or if something more was called for. Luckett argued for a sentence of a year and a day, on the ground that her poor care for Cooper was unintentional and was caused by her own health problems. She added that she was unlikely to reoffend because she suffers from stage-four kidney disease that is likely to shorten her life expectancy. The government urged that a 36-month sentence was warranted, because Luckett had diverted the money she received from the government to care for Cooper to herself, had "worked to pillage and loot the programs" in place for vulnerable people, and had severely neglected Cooper. A special agent with the U.S. Department of Health and Human Services explained that Luckett's fraud had affected several programs: first, the Medicaid program under which she was paid; second, the Social Security program, under which she was receiving extra income because Cooper lived with her; and third, the food assistance program, under which she also collected extra benefits for Cooper.

The district court took pains at sentencing to focus on the fraud, rather than the related criminal charges that are before the state court. The judge commented that what concerned him the most about the case was that "it's not just simply fraud; it's fraud on fraud and perhaps on fraud." The Sentencing Commission, he believed, had not accounted for the multiple layers of fraud in which Luckett had engaged:

> The guideline treatment in this case is based on a straight view of the healthcare fraud alone. I don't think it contemplates what we have in this case in terms of somebody that's defrauding the Government and the healthcare fraud case so they can also defraud the Government in their Social Security disability case, defraud the Government in their food stamp case, and ultimately treat their caregiving client in the way that this particular client was treated.
>
> So it's my opinion that the advice from the Sentencing Commission

is of no benefit to the Court in this case. I reject the advice. I don't think it gives the Court the appropriate advice to cover the facts of this case, the seriousness of this case, or the crime that's been committed here, and I reject the advice.

Luckett's health problems, the court found, did not negate the fact that she was "a manipulator" and "a schemer." Based on these considerations, he imposed a sentence of 48 months.

On appeal Luckett argues that her sentence is substantively unreasonable because it creates an unwarranted sentencing disparity with others who have actually committed the crimes of social-security fraud and food-stamp fraud. See 18 U.S.C. § 3553(a)(6). She also criticizes the sentence because it allegedly fails to take her poor health into account, and thus is especially burdensome for her. Neither of these points, however, undermines the district court's reasoning. The court did not reject the guideline range because it thought that "extra crimes deserve extra punishment." It did so because it thought that Luckett's case presented a more complex variant of health-care fraud—one that spilled over into other areas—than the Sentencing Commission had in mind when it adopted the guideline. The court also took into account the seriousness of the offense, Luckett's history, and the need to provide adequate general deterrence. See 18 U.S.C. § 3553(a)(2)(A), (a)(1), and (a)(2)(B). Not only had Luckett misused at least three federal programs, but she also exposed her daughter and Billups to criminal liability in her zeal to conduct her scheme. These are all points that other decisions have found to be reasonable for sentencing judges to consider. See, *e.g., United States v. Scott,* 657 F.3d 639, 639-41 (7th Cir. 2011); *United States v. Schlueter,* 634 F.3d 965, 966-67 (7th Cir. 2011); *United States v. Mateos,* 623 F.3d 1350, 1354, 1366 (11th Cir. 2010).

Finally, the district court made it clear that it recognized that Luckett was in what it called "descending health." It was just not persuaded that her health offset in any way the seriousness of her offense. The relative weight to give to different characteristics of the defendant is for the district court to determine, in its discretion. We see no abuse of discretion here, and so we AFFIRM the judgment of the district court.